FILED

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

2010 NOV 23  AM 9: 29

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL,

          Plaintiff,

v.

CIVIL ACTION NO. 10-C-2129

Zakaib

GOVERNMENT EMPLOYEES
CREDIT CENTER, INC. a Pennsylvania
corporation, d/b/a CashDirectExpress.com
and CashDirectNow.com; VINCENT KEITH
NEY; individually and in his official capacity as
president and CEO of Government Employees
Credit Center, Inc; DOLLAR FINANCIAL
GROUP, INC., and its wholly-owned
subsidiary, P.D. RECOVERY, INC., both
Delaware corporations, and JEFFREY A.
WEISS, individually and in his official capacity
as president and CEO of Dollar Financial
Group, Inc. and P.D. Recovery, Inc.;

          Defendants.

---

### COMPLAINT FOR INJUNCTION, CONSUMER RESTITUTION, CIVIL PENALTIES, AND OTHER APPROPRIATE RELIEF

---

Plaintiff, the State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General ("the

State" or "Attorney General"), files this Complaint asking the Court to temporarily and

permanently enjoin the above-named Defendants, Government Employees Credit Center, Inc. d/b/a

CashDirectExpress.com and CashDirectNow.com; Vincent Keith Ney; Dollar Financial Group,

Inc.; P.D. Recovery; and Jeffrey A. Weiss (hereinafter collectively "Defendants") from violating

the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101



et seq. ("WVCCPA") and other applicable consumer protection laws and regulations, and to enter a final order awarding the State all other appropriate relief as authorized by W. Va. Code § 46A-7-108.

## I. INTRODUCTION

1.      The State commenced an investigation of the Internet payday loan industry in 2005 in response to complaints by several West Virginia Consumers who were victimized by these usurious loans.

2.      The investigation has resulted in 109 settlement agreements with Internet payday lenders and their collection agencies, and has netted nearly $2.5 million in refunds and cancelled debts for more than 8,000 West Virginia Consumers.

3.      Most of the settlement agreements include a term requiring refunds of all unlawful fees, as well as a permanent ban on the making and collection of Internet payday loans in West Virginia.

4.      While the majority of the industry has now acknowledged that it must comply with West Virginia's lending and usury laws, a segment of the industry, including the Defendants herein, continued to make and collect Internet payday loans in violation of West Virginia law.

5.      As of this date the State commenced seven summary proceedings to enforce its investigative subpoenas and to enjoin the unlawful payday loan activities of those companies that continued to make and collect Internet payday loans in West Virginia.

6.      The State commenced an investigation of the above-named Defendants after receiving consumer complaints and other information disclosing that the Defendants were making and collecting Internet payday loans in West Virginia.

## II. PARTIES

### *Plaintiff*

7.    Darrell V. McGraw, Jr., the Attorney General of the State of West Virginia, is authorized to bring this action on behalf of the State by W. Va. Code § 46A-7-108, W. Va. Code § 46A-7-109, W. Va. Code § 46A-7-110, and W. Va. Code § 46A-7-111.

### *Defendants*

8.    GECC is a Pennsylvania corporation whose principal office is located at 300 Creek View Road, Suite 204, Newark, Delaware 19711.

9.    Vincent Keith Ney ("Ney") is the President, CEO, and owner of GECC.  Ney is believed to reside at 6523 Amber Oak, San Antonio, Texas 78249.

10.    P.D. Recovery, Inc. ("P.D. Recovery") is a Pennsylvania corporation whose only known principal office was located at 1436 Lancaster Avenue, Suite 310, Berwyn, Pennsylvania 19312. P.D. Recovery is believed to be a wholly-owned subsidiary of Dollar Financial Group, Inc.

11.    Dollar Financial Group, Inc. (Dollar Financial Group") is a Pennsylvania corporation whose principal office is located at 1436 Lancaster Avenue, Suite 310, Berwyn, Pennsylvania 19312.  Dollar Financial Group is believed to be the parent corporation of P.D. Recovery.

12.    Jeffrey A. Weiss ("Weiss") is the President, CEO, and owner of P.D. Recovery and Dollar Financial Group.  Weiss is believed to reside at 260 Radnor Chester Road, Villanova, Pennsylvania 19085.

## III. JURISDICTION AND VENUE

13    This Court has jurisdiction to hear this matter pursuant to Article VIII, Section 6

3

of the West Virginia Constitution, W. Va. Code § 51-2-2, and W. Va. Code § 53-5-3.

14      The State of West Virginia has specific personal jurisdiction over the conduct of Defendants and their principals arising from their practice of making loans in West Virginia consumers via its interactive websites and collecting them thereafter. See *Zippo Manufacturing Company v. ZippoDotCom, Inc.*, 952 F.Supp 1119, 1124 (W.D. Pa. 1997); *Tax Commissioner of the State of West Virginia v. MBNA, N.A.*, 640 SE2d 226 (W. Va. 2006); and *QuikPayday v. Stork*, 549 F.3d 1302 (10th Cir. 2008).

15      Venue is proper in this Court pursuant to W. Va. Code § 46A-7-114 and W. Va. Code § 56-1-1(a)(6).

## IV.  DEFINITIONS

16.      "Payday loans" are short term loans or cash advances, typically 14 days, secured by a post-dated check or, as in the case of Internet payday loans, secured by an agreement authorizing an electronic debit for the full loan amount plus interest from the consumer's account.

17.      "West Virginia Consumers" or "West Virginia Accounts" shall mean and include any persons who resided at or provided a West Virginia address at the time they applied for or obtained a loan from GECC and any personal identifying information about such persons or their account records.

## V.  BACKGROUND AND APPLICABLE LAW

18.      The business activities of the Defendants and their agents arising from consumer transactions are subject to the provisions set forth in the WVCCPA, which is regulated by the Attorney General pursuant to W. Va. Code § 46A-7-101 et seq.

19.      The Defendant GECC engaged in the extension of "credit" as that term is defined

4

by W. Va. Code § 46A-1-102(17).

20.     The Defendant GECC engaged in the practice of making "consumer loans" in the State of West Virginia as defined by W. Va. Code § 46A-7-115.

21.     The Defendants Government Employees Credit Center, Inc. ("GECC") and Vincent Keith Ney have engaged in the enterprise of making "payday loans" to consumers in their homes in West Virginia via interactive websites owned or operated by GECC.

22.     GECC's payday loans were electronically deposited into consumers' accounts and required payment of interest with annual percentage rates ("APR") of 650% APR.

23.     West Virginia Code § 46A-7-115 requires any company making consumer loans in West Virginia to obtain a business registration certificate from the state tax department.

24.     GECC was not and has never been licensed to make loans in West Virginia.

25.     All of the Defendants are "debt collectors" as defined by W. Va. Code § 46A-2-122(d).

26.     Defendants P.D. Recovery and Dollar Financial Group are "collection agencies" as defined by the West Virginia Collection Agency Act ("Collection Agency Act"), W. Va. Code § 47-16-2(b).

27.     The Defendants Dollar Financial Group, Inc. and P.D. Recovery, Inc. engaged in the collection of defaulted "payday loans" originated and funded by GECC.

28.     The Collection Agency Act requires companies that collect debts "originally due or asserted to be owned or due another" (emphasis added), including debt purchasers, be licensed and bonded with the state tax department.  See W. Va. § 47-16-2(b) and W. Va. Code § 47-16-4(a) and (b).

5

29.     The Defendants Dollar Financial Group and P.D. Recovery are not and have never been licensed and bonded to collect debts in West Virginia.

30.     A company may not engage in the business of a collection agency in West Virginia until it obtains a certificate of authority from the West Virginia Secretary of State.  See W. Va. Code § 31D-15-1501(a) and W. Va. Code § 31D-15-1501(b)(7).

31.     The Defendants Dollar Financial Group and P.D. Recovery have never had a certificate of authority to transact business in West Virginia.

32.     The West Virginia Legislature created the Lending and Credit Rate Board ("Board"), W. Va. Code § 47A-1-1 et seq., and authorized the Board to prescribe maximum interest rates and charges on loans, credit sales or transactions.

33.     The latest order issued by the Board, effective December 1, 1999, and still in effect today, prescribed a maximum interest rate of 18% per annum for the type of loans made by the Defendants.

34.     Loans to consumers in which the interest rate exceeds the maximum amount prescribed by the Board are "usurious" as defined by W. Va. Code § 47-6-6.

35.     When a person or company engages in the practice of making "usurious loans" as defined by W. Va. Code § 47-6-6, the loans are void as to all interest and, in addition, the consumer may recover "an amount equal to four times all interest agreed to be paid and charged and in any event a minimum of one hundred dollars."

36.     When a person or company engages in the business of making usurious loans in the State of West Virginia without a license, such loan contracts are void and unenforceable.

37.     The violation of West Virginia statutes pertaining to business registration

6

requirements, usury, debt collection, or any other law intended to protect the public and foster fair and honest competition constitutes an unfair or deceptive act or practice as defined by the WVCCPA, W. Va. Code § 46A-6-104.

38.     Repeated and willful violations of the WVCCPA may subject the violator to civil penalties of up to $5,000.00 for each violation, in accordance with W. Va. Code § 46A-7-111(2).

## VI. RELEVANT PERIOD OF TIME

39.     The relevant period of time for this civil action is the time when the Defendants commenced the marketing, origination, funding and collection of Internet payday loans in West Virginia up to and including the present and the future.

## VII. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### *Investigation of GECC*

40.     On March 28, 2006 the State issued an investigative subpoena ("Subpoena") to GECC after it failed to resolve the State's concerns about the making and collecting of usurious Internet payday loans in West Virginia.  The Subpoena issued to GECC is attached hereto as Exhibit A and incorporated by reference herein.

41.     On November 6, 2006, the State filed a Petition to Enforce Investigative Subpoenas ("Petition to Enforce") against GECC and 12 other Internet payday lenders.  See *State of West Virginia, ex rel. Darrell V. McGraw, Jr, v. Apple Fast Cash, et al.*, Kanawha County Circuit Court 06-MISC. 437.

42.     After a hearing on February 5, 2007, at which GECC failed to appear in person or by counsel, the Circuit Court of Kanawha County issued an Order compelling GECC to "comply in full" with the Subpoena within 30 days after the Order and enjoined GECC "and any persons

acting for or on [its] behalf" from making any new loans "and from collecting any existing payday loans from persons residing in West Virginia." A copy of the Order is attached hereto as Exhibit B and incorporated by reference herein.

43.     On September 4, 2007, the State filed a Petition for Contempt against GECC after it failed to comply with the Subpoena and because GECC continued to collect its accounts in West Virginia, directly and through third party collection agencies.

44.     After a hearing on November 20, 2010, at which GECC again failed to appear in person or by counsel, the Circuit Court of Kanawha County issued an Order finding GECC in contempt ("Contempt Order") and fining GECC $3,000.00 per day relating back to April 5, 2007, the first day following the deadline for compliance with the Order, and continuing indefinitely until such time as GECC complies. A copy of the Contempt Order is attached hereto as Exhibit C and incorporated by reference herein.

45.     As of this date, GECC has not complied with the Subpoena.

46.     As of this date, GECC owed to the State $3,981,000 in monetary sanctions as a result of its continued failure to comply with the Contempt Order.

47.     The State's investigation of two collection agencies, Alliance Asset Management, Inc. of Wood Dale, Illinois and Simm Associates, Inc. of Newark, Delaware, disclosed that GECC sold or placed at least 41 defaulted West Virginia accounts for collection.

### *Investigation of P.D. Recovery and Dollar Financial Group*

48.     On July 7, 2009, the State received a formal complaint from Cara Yoney of Cool Ridge, West Virginia, who reported that she had been contacted by a collection agency calling itself DuFrost, LLC that attempted to collect a debt allegedly owed to GECC.

8

49.    The State received a response to the Yoney complaint from Defendant Dollar Financial Group, which stated in part:

> We are advised that <u>Ms. Yoney applied for and received a loan from GECCP-GECC Preferred for the amount of $396 in April, 2007</u>. Ms. Yoney apparently defaulted on this loan. <u>The account was then transferred to P.D. Recovery for collection</u>. This debt was satisfied when the customer paid the balance in full on July 31, 2007.

(Emphasis added.)  A copy of the complete letter from Dollar Financial Group is attached hereto as Exhibit D and incorporated by reference herein.

50.    On August 27, 2009, the State issued a Subpoena to Defendant P.D. Recovery and Dollar Financial Group after the letter disclosed that P.D. Recovery was collecting defaulted accounts for GECC.  A copy of this Subpoena to is attached hereto as Exhibit E and incorporated by reference herein.

51.    The State received a letter dated November 3, 2009 from Hilary B. Miller, Attorney at Law, in response to the Subpoena on behalf of Dollar Financial Group.

52.    In the letter, Mr. Miller responded in part:

> Dollar does not "do business as" P.D. Recovery, Inc. nor has it ever done so.  <u>Dollar is not in possession of the records sought pursuant to your subpoena</u>.  ***  We are advised that P.D. Recovery, Inc. is defunct.  It ceased all operations and had not attempted to collect any debts in the United States at any time <u>after January 2009</u>.

(Emphasis added.)  A copy of the complete letter from Mr. Miller is attached hereto as Exhibit F and incorporated by reference herein.

53.    After the State received Mr. Miller's letter dated November 3, 2002,  the undersigned counsel and Mr. Miller engaged in further discussions by telephone concerning the State's investigation of P.D. Recovery and Dollar Financial Group. During one such conversation, Mr. Miller advised that Dollar Financial Group had indeed located the collection records of P.D.

9

Recovery and currently has them in its possession.

54.     During the telephone conversation, Mr. Miller disclosed that P.D. Recovery collected a total of approximately $26,000 from West Virginia Consumers on behalf of GECC.

55.     As of this date, neither Dollar Financial Group nor P.D. Recovery have produced the collection records of GECC accounts in response to the Subpoena.

56.     The Defendants have continued to collect GECC's payday loans in West Virginia after the Circuit Court of Kanawha County issued an order enjoining the collection of GECC accounts in a subpoena enforcement proceeding as discussed herein below.

### Personal Liability of Defendants Ney and Weiss

57.     As set forth herein above, GECC engaged in the unlawful acts of making and collecting usurious Internet Payday loans in West Virginia, and of continuing to do so after the Circuit Court of Kanawha County entered an Order enjoining it from doing so.  See Exhibit B.

58.     As set forth herein above, Defendants Dollar Financial and P.D. Recovery collected debts in West Virginia without a license and bond to collect any debts and collected debts for GECC after the Circuit Court of Kanawha County issued an Order enjoining the collection of GECC accounts.  See Exhibit B.

59.     In their capacities as the chief executive officer of their respective corporations, Ney and Weiss are charged with affirmative official responsibility in the management and control of the corporations.

60.     Ney and Weiss have a duty to see that their corporations obey the law.  See *State v. Childers*, 415 S.E.2d 460, 466 (W.Va. 1992), citing *Mullins v. Venable*, 297 S.E.2d 866, 871 (W.Va. 1982.)

61.     Ney and Weiss participated directly in the unlawful acts or practices of their corporations or had the authority to control them. See *Federal Trade Commission v. Amy Travel Service*, 825 F.2d 564,573 (7th Cir. 1989.)

62.     As officers of the corporations, Ney and Weiss should be held personally liable for the tortious acts of their respective corporations, including fraud, if they participated in, approved of, sanctioned, or ratified the acts. See *Boling v. Ansted Chrysler-Plymouth-Dodge*, 425 S.E.2d 144, 145 (W. Va. 1992)

### *Liability of Dollar Financial Group for the Acts of P.D. Recovery*

63.     Defendant Weiss is and was President and CEO of both Dollar Financial Group and P.D. Recovery at all times pertinent hereto.

64.     Defendants Dollar Financial Group and P.D. Recovery occupied the same physical office, used the same mailing address, and shared the same telephone and fax numbers at all known times.

65.     After P.D. Recovery allegedly became defunct, Dollar Financial Group responded to its complaints with a specificity that could only be possible if it had complete access to P.D. Recovery's confidential business and account records.

66.     Dollar Financial Group's counsel acknowledged that Dollar Financial Group did have access to P.D. Recovery's confidential records, including the records of the West Virginia Accounts that GECC placed with P.D. Recovery for collection.

67.     Notwithstanding their alleged separate corporate structures, Dollar Financial Group and P.D. Recovery operated as one entity and were the alter egos of each other. See *Norfolk*

*Southern Railway Company v. Maryland*, 437 S.E.2d 277 (W. Va. 1993).

68.     P.D. Recovery was in all pertinent respects merely an instrumentality of its alleged

parent corporation, Dollar Financial Group, as indicated by the criteria adopted for consideration

of such matters by the West Virginia Supreme Court.  See *Norfolk Southern Railway Company,*

*supra* at 282, citing *Bielieki v. Empire Stevedoring, Co. Ltd.*, 741 F.Supp. 758, 761-62 (D.Minn.

1990).

69.     Upon the basis of all the foregoing, Dollar Financial Group is directly and

vicariously liable for the unlawful acts of P.D. Recovery as alleged in this Complaint.

## VIII.  CLAIMS FOR RELIEF AGAINST GECC

### FIRST CAUSE OF ACTION
### (Failure to Comply with Subpoena)

70.     The State reasserts each and every allegation in paragraphs 1 through 69 above as

set forth fully herein.

71.     As of the date of this Complaint, GECC has failed to comply with the Subpoena,

in violation of W. Va. Code § 46A-7-104 and W. Va. Code § 46A-6-104.

72.     In accordance with the Contempt Order previously entered against GECC, see

Exhibit C, the State is entitled to a judgment against GECC in the amount of $3,981,000.

### SECOND CAUSE OF ACTION
### (Making Consumer Loans Without a License)

73.     The State reasserts each and every allegation in paragraphs 1 through 72 above as

set forth fully herein.

74.     GECC made consumer loans to West Virginia Consumers without a business

registration certificate from the state tax department as required by W. Va. Code § 46A 7-115, in

12

violation of W. Va. Code § 46A-7-115 and W. Va. Code § 46A-6-104.

### THIRD CAUSE OF ACTION
### (Making Usurious Loans)

75.     The State reasserts each and every allegation in paragraphs 1 through 74 above as set forth fully herein.

76.     GECC made loans to consumers in which the APR for each was 650%,  which grossly exceeds the maximum amount prescribed by the Board for such loans.

77.     GECC made "usurious" loans as defined by W. Va. Code § 47-6-6, in violation of W. Va. Code § 47-6-6 and W. Va. Code § 46A-6-104.

78.     The consumers who were victimized by GECC's usurious loans are entitled to recover "an amount equal to four times all interest agreed to be paid and in any event a minimum of one hundred dollars," as provided by W. Va. Code § 47-6-6.

### FOURTH CAUSE OF ACTION
### (Unlawful Debt Collection)

79.     The State reasserts each and every allegation in paragraphs 1 through 78 above as if set forth fully herein.

80.     GECC has collected or attempted to collect debts arising from its usurious payday loans when it knew or should have known such loans were unlawful, and continued to do so after the court ordered them to cease all collections on those accounts, in violation of W. Va. Code § 46A-2-127, W. Va. Code § 46A-2-128, and W. Va Code § 46A-6-104.

### FIFTH CAUSE OF ACTION
### (Unconscionability)

81.     The State reasserts each and every allegation in paragraphs 1 through 80 above as

13

if set forth fully herein.

82.     GECC's practice of making and collecting usurious loans without a license, and continuing to do so after the court ordered it to stop, is unconscionable as defined by W. Va. Code § 46A-2-121 and the loan contracts should be voided.

## IX. CLAIMS FOR RELIEF AGAINST DOLLAR FINANCIAL GROUP AND P.D. RECOVERY

### FIRST CAUSE OF ACTION
### (Failure to Comply with Subpoena)

83.     The State reasserts each and every allegation in paragraphs 1 through 82 above as set forth fully herein.

84.     As of the date of this Complaint, Dollar Financial Group and P.D. Recovery have not complied with the Subpoena.

85.     The State is entitled to a final order finding that Dollar Financial Group and P.D. Recovery have willfully failed to comply with the Subpoena and awarding the State a civil penalty of $5,000 against them for each day that they failed to comply with the Subpoena as authorized by W. Va. Code §46A-7-111(2).

### SECOND CAUSE OF ACTION
### (Collecting Debts Without a License and Surety Bond)

86.     The State reasserts each and every allegation in paragraphs 1 through 85 above as set forth fully herein.

87.     P.D. Recovery and Dollar Financial Group were collecting debts from West Virginia Consumers at all times without a license or surety bond as required by the Collection Agency Act, in violation of the Collection Agency Act and W. Va. Code § 46A-6-104.

14

88.     For the reasons set forth herein above, Dollar Financial Group is directly and personally liable for the unlawful acts of P.D. Recovery.

## THIRD CAUSE OF ACTION
### (Engaging in Business Without a Certificate of Authority)

89.     The State reasserts each and every allegation in paragraphs 1 through 88 above as if set forth fully herein.

90.     P.D. Recovery and Dollar Financial Group engaged in the business of a collection agency in West Virginia without obtaining a certificate of authority from the West Virginia Secretary of State, as required by W. Va. Code § 31D-15-1501(a), in violation of W. Va. Code § 31D-15-1501(a), W. Va. Code § 31D-15-1501(b)(7), and W. Va. Code § 46A-6-104.

91.     For the reasons set forth herein above, Dollar Financial Group is directly and vicariously liable for the unlawful acts of P.D. Recovery.

## FOURTH CAUSE OF ACTION
### (Unlawful Debt Collection)

92.     The State reasserts each and every allegation in paragraphs 1 through 91 above as if set forth fully herein.

93.     P.D. Recovery and Dollar Financial Group collected alleged debts arising from "usurious" payday loans made by an unlicensed lender, GECC, in violation of W. Va. Code § 467-6-6, W. Va. Code §4A-6-127, W. Va. Code § 46A-2-128, and W. Va Code § 46A-6-104.

94.     For the reasons set forth herein above, Dollar Financial Group is directly and vicariously liable for the unlawful acts of P.D. Recovery.

### FIFTH CAUSE OF ACTION
### (Contumacious Debt Collection)

95.     The State reasserts each and every allegation in paragraphs 1 through 94 above as if set forth fully herein.

96.     P.D. Recovery and Dollar Financial Group collected West Virginia Accounts after they knew or should have known that the Circuit Court of Kanawha County issued an Order, see Exhibit B, enjoining the collection of GECC accounts, in violation of the Order and W. Va. Code § 46A-2-127, W. Va. Code § 46A-2-128, and W. Va Code § 46A-6-104.

97.     A person, although not a party to a proceeding may be charged with contempt for violation of a court's order entered therein if he has actual knowledge of the order and is acting in privity with a party.  See *Hendershot v. Handlan*, 248 S.E.2d 273 (W. Va. 1978), Syl. Pt. 2.

98.     For the reasons set forth herein above, Dollar Financial Group is directly and vicariously liable for P.D. Recovery's collection of GECC accounts in violation of the Order.

### X.  CLAIMS FOR RELIEF AGAINST NEY

99.     The State reasserts each and every allegation in paragraphs 1 through 98 above as set forth fully herein.

100.    Ney is directly, vicariously, and personally liable for the unlawful actions of GECC as alleged herein above.

101.    The State is entitled to a personal judgment against Ney in the amount of $3,981,000 for GECC's failure to comply with the Subpoena, as alleged in the First Cause of Action herein above.

102.    The State is also entitled to a personal judgment against Ney in an amount to be

determined by the court for GECC's unlawful conduct as alleged in the remaining causes of action herein above.

## XI. CLAIMS FOR RELIEF AGAINST WEISS

103.    The State reasserts each and every allegation in paragraphs 1 through 102 above as set forth fully herein.

104.    Weiss is directly, vicariously, and personally liable for the unlawful actions of Dollar Financial Group and P.D. Recovery as alleged in all of the causes of action against them herein above.

105.    The State is entitled to a personal judgment against Weiss in an amount to be determined by the Court for the unlawful conduct of Dollar Financial Group and P.D. Recovery as alleged in all of the causes of action against them herein above.

## XII. PRAYER

WHEREFORE, the State respectfully prays that it be granted relief against the Defendants as follows:

### Compliance with Subpoena

(a)    That the Court enter an Order compelling the Defendants to fully comply with the State's investigative Subpoenas by providing all documents and information, unredacted, as required by the schedule of documents therein.

### Temporary Relief

(b)    That the Court enter a temporary order as authorized by W. Va. Code § 46A-7-110 (i) enjoining the Defendants from engaging in the making or collection any of any Internet payday loans in State of West Virginia until further or final hearing in the above civil

action; (ii) requiring them to return any payments they may receive from West Virginia

Consumers during the pendency of this action; and (iii) requiring them to notify all consumer

reporting agencies to delete any information they may have reported about West Virginia

Accounts from the consumers' credit records.

### Permanent Relief

(c)    That the Court enter a <u>final order</u> finding that the Defendants have violated the

WVCCPA as alleged herein and permanently enjoining the defendants from violating the

WVCCPA and other applicable consumer protection laws;

(d)    That the Court enter a <u>final order</u> finding that all consumers who are aggrieved

as a result of the Defendants' actions are entitled to restitution, consisting of a full refund of all

payments made to the Defendants or their agents.

(e)    That the Court enter a Final Order awarding all consumers who are aggrieved as

a result of the Defendants' actions their actual damages and a penalty of up to $5,000.00 for

each violation as authorized by W. Va. Code § 46A-5-101 and W. Va. Code § 46A-5-106, and

"excess charges" as authorized by W. Va. Code § 47-6-6 and W. Va. Code § 46A-7-111(1);

(f)    That the Court enter a <u>final order</u> finding that GECC's loans to West Virginia

Consumers are void *ab initio*, requiring that GECC close all of its West Virginia collection

accounts with a zero balance as provided by W. Va. Code § 46A-5-105.

(g)    That the Court enter an order requiring that GECC send a notice to the three

major consumer reporting agencies directing that all references to the accounts be deleted from

the consumers' credit records;

(h)    That the Court enter a <u>final order</u> finding that the Defendants have engaged in a

course of repeated and willful violations of the WVCCPA as alleged in the causes of action set

forth herein above and requiring that the Defendants pay a civil penalty of up to $5,000.00 to

the State for each such violation as authorized by W. Va. Code § 46A-7-111(2);

      (i)     That the Court enter a <u>final order</u> finding Ney personally liable for the acts and

practices of GECC as alleged in the causes of action in this Complaint.

      (j)     That the Court enter an order finding Weiss personally liable for the acts and

practices of Dollar Financial Group and P.D. Recovery as alleged in the causes of action in this

Complaint.

      (k)     That the Court enter a <u>final order</u> as authorized by W. Va. Code § 46A-7-108

requiring that the Defendants reimburse the State for all its attorney's fees and costs expended

in connection with the investigation and litigation of this matter; and

      (l)     That the Court enter an order awarding the State such other and further equitable

relief as is proper and just arising from this matter.

                                   STATE OF WEST VIRGINIA ex rel.
                                   DARRELL V. McGRAW, JR.,
                                   ATTORNEY GENERAL, Plaintiff

                                   By Counsel

NORMAN GOOGEL (WV State Bar # 1438)
ASSISTANT ATTORNEY GENERAL
JILL L. MILES (WV State Bar # 4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection/Antitrust Division
P.O. Box 1789
Charleston, WV  25326-1789

## VERIFICATION

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:

I, NORMAN GOOGEL, ASSISTANT ATTORNEY GENERAL, being duly sworn, depose and say that I am the counsel of record for Plaintiff in the foregoing styled civil action; that I am familiar with the contents of the foregoing Complaint for Injunction, Consumer Restitution, Civil Penalties, and other Appropriate Relief; and that the facts and allegations contained therein are true, except such as are therein stated upon information and belief, and that as to such allegations I believe them to be true.

NORMAN GOOGEL (WV State Bar # 1438)
ASSISTANT ATTORNEY GENERAL

Taken, subscribed, and sworn to before me in the County and State aforesaid this 22 nd

day of November, 2010.

My commission expires April 13, 2015 .

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
ANGELA R. VICKERS
Office of the Attorney General
P. O. Box 1789
Charleston, WV 25326-1789
My Commission Expires April 13, 2015

NOTARY PUBLIC

BEFORE THE ATTORNEY GENERAL OF WEST VIRGINIA
STATE CAPITOL
CHARLESTON, WEST VIRGINIA

### SUBPOENA

IN THE MATTER OF THE INVESTIGATION OF:

GECC            ) SUBPOENA TO
D/B/A CASHDIRECTNOW.COM    ) PRODUCE CERTAIN
1718 West Main Street, #210      ) RECORDS
Rapid City, SD 57701        )

IN THE NAME OF THE STATE OF WEST VIRGINIA:

TO: Vincent K Ney, President     )
   and GECC         )
   d/b/a Cash DirectNow.com    )
   1718 West Main Street, #210   )
   Rapid City, SD 57701      )

   YOU ARE HEREBY COMMANDED to produce the documentary material in your possession, custody, or control described below for examination and copying on or before the 21st day of April, 2006, to Norman Googel, Assistant Attorney General, at the offices of the Attorney General's Consumer Protection Division, 812 Quarrier Street, 4th Floor, Charleston, West Virginia 25301-2617.

   This subpoena is issued pursuant to W. Va. Code § 46A-7-104(1), and concerns an investigation into alleged unfair or deceptive acts or practices and other possible violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq.

   All information provided to the Office of the Attorney General pursuant to this subpoena shall be retained in a confidential manner consistent with the provisions of W. Va. Code § 46A-7-104(4) and shall not be made public except upon the commencement of an action to enforce the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq. or other law.



EXHIBIT

A

## INSTRUCTIONS

Compliance with this subpoena requires compliance with the following instructions:

1.      "CashDirectNow.com" shall mean and refer collectively to GECC; CashDirectNow.com, its President and/or CEO, and their successor(s), parent corporations, corporate subsidiaries, affiliates, and their officers, directors, partners, owners, employees, agents, servants, and independent contractors.

2.      The scope of this subpoena encompasses all the documents of CashDirectNow.com, wherever situated, including those documents in the possession and control of CashDirectNow.com's officers, directors, partners, owners, employees, agents, servants, and branch offices.

3.      If necessary, CashDirectNow.com shall assist the designated representative(s) from the West Virginia Office of the Attorney General in locating the schedule of documents requested in this subpoena.

4.      In the event that CashDirectNow.com refuses to produce any documents requested herein on grounds of privilege, CashDirectNow.com shall identify such documents and disclose the grounds for such claim of privilege.

5.      The scope of this subpoena is the date that CashDirectNow.com commenced making payday loans to any person residing in the State of West Virginia up to and including the present, unless otherwise noted.

## DEFINITIONS

For the purpose of this subpoena the following definitions shall apply:

1.      "Document" has the same meaning as in Rule 34(a) of the West Virginia Rules of Civil Procedure and includes but is not limited to the original and all drafts of all written or

2

graphic matter, however produced or reproduced of any kind or facsimiles, summaries, financial statements, diaries, communications, invoices, receipts, log books, e-mails, telegrams, ledgers, accounts, minutes, pamphlets, notes, interoffice communications, training materials, records of meetings, conferences and telephone or other conversations or communications.

2.    "You" or "your" shall have the same meaning as "CashDirectNow.com" as indicated above in item 1 of the Instructions.

3.    As used herein, the word "pertaining" includes containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing or characterizing, either directly or indirectly, in whole or in part.

4.    As used herein, the word "identify," "identified," or "identifying" shall mean, at a minimum, the name, address and telephone number of the individual or company. When referring to an individual, both home and work telephone numbers shall be provided.

5.    As used herein, "communication" means the transmission of information in any form, including in the form of acts, ideas, inquiries, or otherwise.

6.    As used herein, "person" means any natural person or any non-natural entity, including without limitation any corporation, trust, partnership, cooperative, joint venture, agent, contractor, consultant, and association. The term also includes any groups of associations of persons.

7.    As used herein, the word "list" shall mean a written document or hard copy <u>and</u> a computer disk in Microsoft Excel or other mutually agreed upon format containing the requested information.

3

8.      As used herein, "payday loans" shall mean and include short-term loans or cash advances, typically for a period of approximately 14 days, based upon or secured by a present or post-dated check or by an agreement authorizing debits of amounts owed from the consumer's checking account. For purposes of your response to this subpoena, "payday loans" shall also mean and include loans secured by the title to a motor vehicle ("title loans") and any loans on which the amount of interest charged to the consumer exceeds 18% APR.

9.      As used herein, "West Virginia consumers" or "West Virginia accounts" shall refer or pertain to all consumers who resided in West Virginia at the time they obtained payday loans from CashDirectNow.com.

10.     As used herein, "advertisement" means the publication, dissemination or circulation of any matter orally, in writing,  electronically, or by any means and in any media whatsoever, including the internet, for the purpose of inducing any person to enter into any obligation, sign any contract, or acquire any interest in goods or services.

11.     As used herein, "delinquent accounts(s)" shall mean and include any account in which any scheduled payment was not received by the date due and, as a result, CashDirectNow.com has characterized the account as past due, in default, or has charged-off or closed the account for the reason of non-payment.

## SCHEDULE OF DOCUMENTS

The following documents pertaining to West Virginia consumers and/or West Virginia accounts:

1.      A list identifying all West Virginia consumers who obtained payday loans from CashDirectNow.com during the period covered by this subpoena, including, at a minimum,

4

the date and amount of each loan (exclusive of fees), the amount actually collected (itemizing the amount representing interest or other fees), and the account status.

2.  . A hard copy of all documents in your possession pertaining to each consumer that you identified in response to Item 1 above, including but not limited to, (i) the loan application; (ii) all communications between CashDirectNow.com, the consumer, and any third parties whatsoever pertaining to the approval, making, or collection of the loan.

3.  A blank hard copy of all business forms, documents, letters or any communications used by CashDirectNow.com at any time or in any manner whatsoever in connection with making payday loans to West Virginia consumers along with an appropriate explanation of when, in what sequence, and under what circumstances each such document is used.

4.  A list identifying all West Virginia consumers who obtained payday loans from CashDirectNow.com and whose accounts presently are or became delinquent, in default, charged-off or closed for reason of nonpayment ("delinquent accounts").

5.  All documents pertaining to the collection of each delinquent account you identified above, including, but not limited to, the following:

(a)  Records of all payments made on the account to CashDirectNow.com, including, at a minimum, the date and the amount of each payday loan; the total amount actually collected on each payday loan (with an itemization of the amounts that represent interest or other fees); and the current balance presently owed.

(b)  Records of all communications, both written and oral, between CashDirectNow.com and the consumer pertaining to collection of the account.

5

6. Identify all consumer reporting agencies to whom CashDirectNow.com reported any information whatsoever, including check guarantee companies, about the delinquent accounts identified in item four (4) above and, for each such account, produce all documents stating the nature of and the date of all such information it reported.

7. Identify all collection agencies or third parties, including attorneys at law, to whom CashDirectNow.com sold or assigned any West Virginia accounts for collection and provide all contracts or agreements between CashDirectNow.com and each such outside debt collector pertaining to collection of the accounts.

8. All documents pertaining to CashDirectNow.com's policies and procedures pertaining to the making of payday loans, investigation of consumer complaints, and the collection of accounts, including, but not limited to, business operations manuals, written policies and procedures, and internal memoranda.

9. All standard forms and notices used by CashDirectNow.com for communication with West Virginia consumers for debt collection along with an appropriate explanation of when, in what sequence, and under what circumstances each form or notice is used.

10. Documents pertaining to the training of CashDirectNow.com employees in applicable law, both state (including the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq.), and federal (including the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act, 15 U.S.C § 1681 et seq.), pertaining to debt collection activities, consumer reporting activities, and steps to be taken in the investigation and resolution of consumer complaints or disputes.

6

11.     Identify all present or former employees, including managerial and supervisory, who engaged in whole or in part in the making of payday loans or the collection of delinquent accounts during the period covered by the subpoena.

12.     All documents pertaining to CashDirectNow.com's criteria for evaluating the creditworthiness of consumers or the determination to make their loan.

13.     Identify any outside persons or companies that assist CashDirectNow.com in the evaluation of the creditworthiness of consumers or the determination to make the loan and provide all documents pertaining to the foregoing.

14.     All documents pertaining to any products or services other than payday loans, including other financial services products, sold by CashDirectNow.com to West Virginia consumers and, if there are any, (i) provide a list identifying all outside companies with whom CashDirectNow.com has a relationship with for the sale of such products or services and (ii) provide a copy of the contract or agreement between CashDirectNow.com and each such company.

15.     A list identifying all persons whose CashDirectNow.com delinquent accounts were closed or written off by reason of default and have been sued in court by CashDirectNow.com or its agents or assignees for collection of the alleged debt.

16.     For the consumers identified in item number fifteen (15) above, describe all civil actions by providing the complete style of the case, including the civil action number, the name of the court where the case was filed, a copy of the complaint and/or answers and counterclaims, if any, and the final dispositional or latest substantive order or decree.

17.     A list identifying all West Virginia consumers who were criminally prosecuted by CashDirectNow.com, or whose accounts were referred to law enforcement agencies for

criminal prosecution by CashDirectNow.com, as a result of a check dishonored for insufficient funds or any other conduct arising from a payday loan transaction with CashDirectNow.com.

18.     Provide a chart, diagram, or other documents identifying all parent companies, corporate affiliates, or subsidiaries of CashDirectNow.com.

19.     All business licenses, certificates of authority, charters, and any other licenses or authorizations allowing CashDirectNow.com, or any of its parent companies, corporate affiliates, or subsidiaries to engage in business or collect debts in West Virginia, and any other state or jurisdiction, including applications and supporting documents filed to obtain the licenses and authorizations, during the period covered by the subpoena.

20.     All documents pertaining to or that identify the physical location of each office of CashDirectNow.com during the period covered by the subpoena, and each address where CashDirectNow.com receives mail, including (i) a copy of the lease for the physical location of each office; and (ii) a copy of the contract or agreement for each private mailbox or other locations where written or printed communications are received.

21.     The articles of incorporation, by-laws, charters, and any other documents pertaining to the creation, managment, operation, managment, operating guidelines, objectives or mission of CashDirectNow.com.

22.     All documents identifying the president and CEO, officers, directors, board members and any other person with an ownership interest in CashDirectNow.com during the period covered by the subpoena.

23.     All contracts or agreements of any type or nature whatsoever by CashDirectNow.com and any other party pertaining to:

8

i.      the operation or administration of its website;

ii.     transmission of funds to consumers' accounts;

iii.    debiting of funds from consumers' accounts;

iv.     the marketing of its products or services to consumers; and

v.      the application for, making of, or collection of payday loans that describe the

parties' respective roles and obligations, methods of operation, and distribution of

expenses incurred and proceeds generated.

24.     Produce copies of all advertisements whatsoever that CashDirectNow.com has

published or that CashDirectNow.com has caused to be published by others, pertaining to

pools or spas that are manufactured, distributed or sold by CashDirectNow.com or its

dealers, including advertisements published in print or electronic media, by newspapers,

television or radio stations, or communicated in any manner or in any media whatsoever.

25.     For each such "advertisement" that you identified in response to item twenty-

four (24) above (i) identify the person or company that created or designed the

advertisement; (ii) identify the person or company that published the advertisement; and (iii)

produce a copy of the contract or agreement between CashDirectNow.com and each person

or company that created or designed the advertisement and each person or company that

published the advertisement, including any other documents that identify the amount paid

by CashDirectNow.com to each such person or company for any service pertaining to its

advertisements.

26.     All communications of any type or nature between CashDirectNow.com and

the Federal Deposit Insurance Corporation ("FDIC"), the Federal Trade Commission ("FTC"),

and any other state or federal regulators whatsoever pertaining to the making, supervision

9

or regulation of payday loans or other financial services products or the business practices of CashDirectNow.com.

27.     Documents pertaining to all civil actions, including both private class action and individual suits, and any investigations or enforcement proceedings commenced by any state Attorney General's Office, the U.S. Department of Justice, the FDIC, the FTC, or any other state or federal law enforcement or regulatory agency, involving payday loans and/or the collection of consumer accounts by CashDirectNow.com, including (i) the complaint or initial pleading and all substantive pleadings or documents filed therein; and (ii) all dispositional orders, consent decrees, settlement agreements, assurances of discontinuance, or judgments of any type or nature whatsoever from the matter.

Given under my hand this _28th_ day of _March_, 2006.

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL

By: _____

JILL L. MILES
DEPUTY ATTORNEY GENERAL
Consumer Protection/Antitrust Division

10

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL,

        Petitioner,

v.                                   CIVIL ACTION NO. 06-MISC-437

Apple Fast Cash Personal Loans;
Cash Advance Network, Inc.;
Cash Advance USA; Cash Advance
Marketing, Inc. d/b/a Cash Back Values;
Cash Net; American Interweb Marketing
d/b/a CASHRebateOnLine.com;
Leads Global, Inc. d/b/a Cash Today Limited, and
d/b/a Cash2day4you.com;
GECC d/b/a Cashdirectnow.com;
Americash Hotline, LLC d/b/a Direct Cash Express, LLC;
Ambassador Financial Services d/b/a Nationwide Cash;
PayDay OK d/b/a PayDay Select; Quik Payday.com Financial
Solutions; and USA Cash Center,

        Respondents.

## ORDER

On the 5th day of February, 2007, came the Petitioner, State of West Virginia ex

rel. Darrell V. McGraw, Jr., Attorney General ("the State" or "Attorney General"), by

Norman Googel, Assistant Attorney General, and also came the Respondent, Leads

Global, Inc. ("Leads Global"), by counsel, William D. Wilmoth and Melanie Morgan

Norris of Steptoe & Johnson, PLLC., for the hearing on the State's Petition to Enforce

Investigative Subpoenas ("Petition") returnable this date and time pursuant to the Show

Cause Order entered herein. No other Respondents appeared in person or by counsel

at the hearing in this matter.



EXHIBIT
B

Whereupon, the State advised the Court that the Attorney General has recently entered into settlement agreements with Respondents Apple Fast Cash Personal Loans and PayDay OK and, therefore, the State no longer seeks an order compelling them to comply with the subpoenas.  However, the State asked the Court to proceed with its Petition with respect to all remaining Respondents.

It appearing that all other Respondents have been properly served with the Attorney General's investigative subpoenas, and with the Petition and Show Cause Order, this Court is of the opinion that the State's Petition should be granted as to all Respondents except for Leads Global.

Thereupon, the Court proceeded to hear and consider the arguments of counsel with respect to Leads Global.   Specifically, Leads Global has objected to the jurisdiction of this Court.  Accordingly, this Court determined that there is a dispute about whether Leads Global is the owner or operator of the website from which West Virginia consumers obtained Internet payday loans and whether Leads Global was the lender, as opposed to a leads generator, for the subject loans.  Accordingly, the court finds that the hearing on the Petition as to Leads Global should be continued to a later date and time to be determined by the Court, at which time the parties may present evidence in support of their respective positions.

Upon the basis of all of the foregoing, it is therefore ORDERED  as follows:

1.      The State's Petition to Enforce Investigative Subpoenas should be, and it hereby is, GRANTED, with respect to all remaining Respondents named in the above civil action, except for Apple Fast Cash Personal Loans, PayDayOK and Leads Global.

2.     The Respondents Cash Advance Network, Inc., Cash Advance USA, Cash Advance Marketing, Inc., Cash Net, American Interweb Marketing, GECC, Americash Hotline, LLC, Ambassador Financial Services, Quik Payday.com Financial Solutions and USA Cash Center, shall FORTHWITH comply in full with the investigative subpoenas issued by the Attorney General.  The Respondents shall be deemed to be in compliance with this Order if they produce all documents and information required by the subpoenas to the Attorney General within 30 days from the date of entry of this Order.

3.     The Respondents Cash Advance Network, Inc., Cash Advance USA, Cash Advance Marketing, Inc., Cash Net, American Interweb Marketing, GECC, Americash Hotline, LLC, Ambassador Financial Services, Quik Payday.com Financial Solutions and USA Cash Center, and any persons acting for or on their behalf, are ENJOINED and RESTRAINED from making any new payday loans to, and from collecting any existing payday loans from, persons residing in the State of West Virginia until such time as they comply in full with the Attorney General's investigative subpoena or until further Order of this Court.

4.     The hearing on the Attorney General's Petition with respect to Leads Global is hereby continued until a date and time to be determined later by the Court, at which time the parties may present such evidence as they desire in support of their respective positions.

The Clerk of this Court is hereby directed to send a certified copy of this Order to counsel for the Attorney General and counsel for Leads Global.  The Clerk is further

directed to send 10 additional certified copies of the Order to the Attorney General for

his use in effecting service of this Order upon the remaining Respondents herein.

Entered this _____1ˢᵗ_____ day of _____March_____, 2007.

_____
Paul Zakaib, Jr., Judge

Prepared by:

_____
NORMAN GOOGEL (WV State Bar # 1438)
JILL MILES (WV State Bar # 4671)
ASSISTANT ATTORNEY GENERAL
Consumer Protection/Antitrust Division
P.O. Box 1789
Charleston, WV  25326-1789
(304) 558-8986
*Counsel for Petitioner*

Approved for entry:

_____
WILLIAM D. WILMOTH (WV State Bar # 4075)
MELANIE MORGAN NORRIS (WV State Bar # 8581)
Steptoe & Johnson
P.O. Box 751
Wheeling, West Virginia  26003
*Counsel for Leads Global, Inc.*

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

State of West Virginia ex rel.
Darrell V. Mcgraw, Jr.,
Attorney General,

        Petitioner,

v.                              Civil Action No.: 06-MISC-437-03

Cash Advance Network, Inc.;
Cash Advance USA; Cash Advance
Marketing, Inc. d/b/a Cash Back Values;
Cash Net; Leads Global, Inc.
d/b/a Cash Today Limited, and Cash2day4you.com;
GECC d/b/a Cashdirectnow.com;
Americash Hotline, LLC  d/b/a Direct Cash Express, LLC;
Ambassador Financial Services d/b/a Nationwide Cash;
Quik Payday.com Financial Solutions; and USA Cash Center,

        Respondents.

## ORDER

On the 20th day of November, 2007, came the Petitioner, State of West Virginia ex

rel. Darrell V. McGraw, Jr., Attorney General ("the State" or "Attorney General") by Norman

Googel, Assistant Attorney General, for the hearing on the State's Petition for Contempt

("Petition") before the Honorable Paul Zakaib, Jr., returnable to this date and time pursuant

to the Show Cause Order entered herein on September 11, 2007.    Whereupon, the Court

directed the bailiff to call the case for hearing and the bailiff did so, but none of the

Respondents appeared in person or by counsel for the hearing.

Whereupon, the Court proceeded to hear and consider the representations of counsel

for the State and the pleadings of record, including the exhibits and documents attached

thereto, upon the basis of which the Court hereby finds as follows:

1.      On March 5, 2007, this Court entered an Order compelling the above-named

Respondents, Cash Advance Network, Inc.; Cash Advance USA; Cash Advance Marketing,



Inc. d/b/a Cash Back Values; Cash Net; GECC d/b/a Cashdirectnow.com; Americash Hotline, LLC d/b/a Direct Cash Express, LLC; Ambassador Financial Services d/b/a Nationwide Cash; Quik Payday.com Financial Solutions; and USA Cash Center, to comply in full with the State's investigative subpoenas ("Subpoenas") within 30 days after entry of the Order and further enjoining the Respondents from making any new payday loans or collecting any existing payday loans pending further order of this Court.

2.    On September 5, 2007, the State filed a Petition alleging that the Respondents failed to comply with the Subpoenas as ordered by the Court and petitioned the Court to find that the parties were in contempt and to impose such sanctions as may be necessary to compel the Respondents to comply with the order of this Court.

3.    A review of the file indicates that the State has obtained proper service of process upon the Respondents Cash Advance Marketing, Inc. and GECC, but not the other Respondents named in the Petition.

4.    The State has alleged in its verified Petition that Respondents Cash Advance Marketing and GECC failed to comply with the Order of this Court and the said Respondents failed to appear to contest this allegation or to show cause why they should not be held in contempt.

5.    The State advised the Court that, subsequent to the filing of this Petition, it entered into a settlement agreement with Respondent Ambassador Financial Services and moved that Ambassador be dismissed from this civil action.

Upon the basis of all of the foregoing, it is therefore ORDERED, ADJUDGED, and DECREED as follows:

1.    Ambassador Financial Services is hereby dismissed with prejudice from the above civil action.

2

2.      Respondents Cash Advance Network, Inc. and GECC are hereby found in contempt for failing to comply with the Subpoenas in violation of the Order entered by this Court compelling them to do so.

3.      The Court hereby imposes a fine of $ _3000.00_ per day upon the Respondents, Cash Advance Marketing, Inc. and GECC, relating back to April 5, 2007, the first day following the deadline for compliance with the Order of this Court, and continuing indefinitely each day until such time as the Respondents fully comply with the Subpoenas as determined by this Court.

4.      The hearing on the State's Petition as to those Respondents who were not properly served with the Order and Petition is continued generally until such time as the State may obtain proper service on those Respondents.

The Clerk is directed to forward certified copies of this Order to all parties or their counsel of record.

Entered this ___7th___ day of ___January___, 2008.

_____
Paul Zakaib, Jr., Judge

Prepared by:

_____
NORMAN GOOGEL, ESQUIRE (WV State Bar # 1438)
JILL MILES (WV State Bar # 4671)
ASSISTANT ATTORNEY GENERAL
Consumer Protection/Antitrust Division
P.O. Box 1789
Charleston, WV 25326-1789
(304) 558-8986
*Counsel for Petitioner*

3

Case 2:11-cv-00371   Document 1-1   Filed 05/23/11   Page 38 of 52 PageID #: 44

 **DOLLAR**
FINANCIAL GROUP, INC.

1436 Lancaster Avenue, Suite 310
Berwyn, PA 19312
Phone: 610-296-3400
Fax: 610-296-0991

# RECEIVED

JUL 2 0 2009

## ATTORNEY GENERAL'S OFFICE

| | | | |
|---|---|---|---|
| **FAX TO:** | Dennis Cunningham | **FROM:** | Cheryl Dempsey |
| **COMPANY:** | Office of Attorney General | **COMPANY:** | Dollar Financial Group |
| **FAX #:** | 304-558-0184 | **SENDER'S FAX #:** | 610-240-4969 |
| **PHONE :** | 304-558-8986 | **SENDER'S PHONE #:** | 610-640-5942 |
| | | **DATE:** | 7/20/09 |
| **RE:** | Cara Yoncy complaint response | **# OF PAGES INCLUDING COVER:** | 2 |

Dear Dennis:

Attached you will find the complaint response for Cara. I had also shipped out the hard copy via FedEx today.  If you have any questions please feel free to give me a call.

Sincerely,

Cheryl Dempsey
Credit Department

The information contained in this message is privileged and confidential information intended solely for use by the identified recipient(s). If the reader(s) of this information is not the identified recipient(s), the reader(s) is now notified that any use, dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify Dollar Financial Group immediately



EXHIBIT

D



# DOLLAR
## FINANCIAL GROUP, INC.

July 17, 2009

Mr. Dennis P. Cunningham
State of West Virginia
Office of the Attorney General
812 Quarrier Street
Charlestown, West Virginia 25301

Re: Complaint of Cara Yoney   Dated May 5, 2009

Dear Mr. Cunningham:

PD Recovery, Inc hereby respectfully responds to your letter dated May 1, 2009 with regard to the complaint of Cara Yoney.

We are advised that Ms. Yoney applied for and received a loan from GECCP-GECC Preferred for the amount of $396 in April, 2007. Ms. Yoney apparently defaulted on this loan. The account was then transferred to PD Recovery, Inc. for collection. This debt was satisfied when the customer paid the balance in full on July 31, 2007.

PD Recovery, Inc. is in no way affiliated with DuFrost, LLC. No collection efforts have been taken on this debt by P.D. Recovery, Inc. since the loan was paid in full in July, 2007.

If you have any further questions, please feel free to give me a call at 610-640-5942.

Sincerely,

Cheryl Dempsey
Credit Department

3  Daylesford Plaza
4  1436 Lancaster Avenue, Suite 230
3  Berwyn, PA 19312
2  610-296-3400
8  610 296 7844 Fax

BEFORE THE ATTORNEY GENERAL OF WEST VIRGINIA
STATE CAPITOL
CHARLESTON, WEST VIRGINIA

## SUBPOENA

**IN THE MATTER OF THE INVESTIGATION OF:**

| | | |
|---|---|---|
| DOLLAR FINANCIAL GROUP, INC. | ) | SUBPOENA TO |
| d/b/a PD Recovery, Inc. | ) | PRODUCE CERTAIN |
| 1436 Lancaster Avenue, Suite 310 | ) | RECORDS |
| Berwyn, PA 19312 | ) | |

**IN THE NAME OF THE STATE OF WEST VIRGINIA:**

TO:   Custodian of the Records
DOLLAR FINANCIAL GROUP, INC.
d/b/a PD Recovery, Inc.
1436 Lancaster Avenue, Suite 310
Berwyn, PA 19312

YOU ARE HEREBY COMMANDED to produce the documentary material in your possession, custody, or control described below for examination and copying on or before the 18th day of September, 2009, to Norman Googel, Assistant Attorney General, at the offices of the Attorney General's Consumer Protection Division, 812 Quarrier Street, 1st Floor, Charleston, West Virginia 25301-2617.

The scope of this subpoena is the period beginning January 1, 2006, or the date when Inland Capital Services commenced debt collection activities in West Virginia, up to and including the present and continuing until the time of full compliance, unless otherwise noted. This subpoena is issued pursuant to W. Va. Code § 46A-7-104(1), and concerns an investigation into alleged usurious lending activities or conduct in support or furtherance thereof, unfair or deceptive acts or practices, and other possible violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq.

EXHIBIT
E

All information provided to the Office of the Attorney General pursuant to this subpoena shall be retained in a confidential manner consistent with the provisions of W. Va. Code § 46A-7-104(4) and shall not be made public except upon the commencement of an action to enforce the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq. or other law.

## INSTRUCTIONS

Compliance with this subpoena requires compliance with the following instructions:

1.      "PD Recovery" shall mean and refer collectively to Dollar Financial Group, Inc.; Dollar Financial Group, Inc. d/b/a PD Recovery, Inc., its Owner, President and/or CEO, and their successor(s), parent corporations, corporate subsidiaries, affiliates, and their officers, directors, partners, owners, employees, agents, servants, and independent contractors.

2.      The scope of this subpoena encompasses all the documents of PD Recovery, wherever situated, including those documents in the possession and control of PD Recovery's officers, directors, partners, owners, employees, agents, servants, and branch offices.

3.      If necessary, PD Recovery shall assist the designated representative(s) from the West Virginia Office of the Attorney General in locating the schedule of documents requested in this subpoena.

4.      In the event that PD Recovery refuses to produce any documents requested herein on grounds of privilege, PD Recovery shall identify such documents and disclose the grounds for such claim of privilege.

5.      The scope of this subpoena is the date that PD Recovery commenced making payday loans to any person residing in the State of West Virginia up to and including the date of full compliance with this subpoena, unless otherwise noted.

2

6.      For the purposes of responding to this subpoena, PD Recovery is deemed to be "making payday loans" and must provide the documents requested herein if it is a marketer, leads generator, processing or servicing company, lender, or is involved in any capacity in a process that results in the making of "payday loans" (as that term is defined herein below) or any conduct in support or furtherance thereof to persons residing in West Virginia.

## DEFINITIONS

For the purpose of this subpoena the following definitions shall apply:

1.      "Document" has the same meaning as in Rule 34(a) of the West Virginia Rules of Civil Procedure and includes but is not limited to the original and all drafts of all written or graphic matter, however produced or reproduced of any kind or facsimiles, summaries, financial statements, diaries, communications, invoices, receipts, log books, e-mails, telegrams, ledgers, accounts, minutes, pamphlets, notes, interoffice communications, training materials, records of meetings, conferences and telephone or other conversations or communications.

2.      "You" or "your" shall have the same meaning as "PD Recovery" as indicated above in item 1 of the Instructions.

3.      As used herein, the word "pertaining" includes containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing or characterizing, either directly or indirectly, in whole or in part.

4.      As used herein, the word "identify", "identified",or "identifying" shall mean, at a minimum, the following: Provide the corporate name, including any dbas, physical address, telephone number, web site, and the name of the owner or principal officer, when referring to a

3

company; provide the name, physical address, e-mail, and telephone numbers, both work, home, and mobile (if applicable), when referring to an individual.

5. As used herein, "communication" means the transmission of information in any form, including in the form of acts, ideas, inquiries, or otherwise.

6. As used herein, "person" means any natural person or any non-natural entity, including without limitation any corporation, trust, partnership, cooperative, joint venture, agent, contractor, consultant, and association. The term also includes any groups or associations of persons.

7. As used herein, the word "list" shall mean a written document or hard copy <u>and</u> a computer disk in Microsoft Excel or other mutually agreed upon format containing the requested information.

8. As used herein, "payday loans" shall mean and include short-term loans or cash advances, typically for a period of approximately 14 days, based upon or secured by a present or post-dated check or by an agreement authorizing debits of amounts owed from the consumer's checking account. For purposes of your response to this subpoena, "payday loans" shall also mean and include loans secured by the title to a motor vehicle ("title loans") and any loans on which the amount of interest charged to the consumer exceeds 18% APR.

9. As used herein, "West Virginia Consumers" or "West Virginia Accounts" shall refer or pertain to all consumers who resided in West Virginia at the time they obtained payday loans from PD Recovery or from any company with which PD Recovery has or had a contractual agreement pertaining to payday loans, including but not limited to, other payday lenders, marketers, leads generators, and servicing and processing companies.

10. As used herein, "advertisement" means the publication, dissemination or circulation of any matter orally, in writing, electronically, or by any means and in any media, including the

4

internet, for the purpose of inducing any person to enter into any obligation, sign any contract, or acquire any interest in goods or services.

11.    As used herein, "delinquent accounts(s)" shall mean and include any account in which any scheduled payment was not received by the date due and, as a result, PD Recovery has characterized the account as past due, in default, or has charged-off or closed the account for the reason of non-payment.

12.    As used herein, "debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer.  The term shall include the collection of claims by persons or companies engaged in the business of purchasing defaulted or charged-off accounts originally owed to others for collection, whether the collection activities are conducted directly or indirectly, actively or passively, or contracted out to third party collection agencies or attorneys at law.

## SCHEDULE OF DOCUMENTS

The following documents pertaining to West Virginia Consumers and/or West Virginia Accounts:

1.    Identify PD Recovery, its parent companies, subsidiaries, affiliates, and their principal owners, officers, directors, managers and any person with an ownership interest in PD Recovery.

2.    A list identifying all West Virginia Consumers who obtained payday loans from PD Recovery during the period covered by this subpoena, including, at a minimum, the date and principal amount of each loan and the interest and fees charged; the amount actually collected on each loan (itemizing the portions that represent interest or other fees); and the account balance currently owed, if any.

5

3.     A hard copy of all documents in your possession pertaining to each consumer that you identified in response to Item 2 above, including but not limited to, (i) the loan application; (ii) all communications between PD Recovery, the consumer, and any third parties pertaining to the lead generation, processing, servicing, approval, making, or collection of the loan.

4.     A blank hard copy of all business forms, documents, letters or any communications used by PD Recovery at any time or in any manner  in connection with the leads generation, approval, making, processing, servicing or collection of payday loans to West Virginia Consumers along with an appropriate explanation of when, in what sequence, and under what circumstances each such document is used.

5.     A list identifying all West Virginia Consumers who obtained payday loans from PD Recovery and whose accounts presently are or became delinquent, in default, charged-off or closed for reason of nonpayment ("delinquent accounts").

6.     All documents pertaining to the collection of each delinquent account you identified above, including but not limited to, the following:

(a)     Records of all payments made on the account to PD Recovery, including, at a minimum, the date and the amount of each payday loan; the total amount actually collected on each payday loan (with an itemization of the amounts that represent interest or other fees); and the current balance presently owed.

(b)     Records of all communications, both written and oral, between PD Recovery and the consumer pertaining to collection of the account.

7.     Identify all consumer reporting agencies to whom PD Recovery reported any information, including check guarantee companies, about all West Virginia accounts and, for each

such account, produce all documents stating the nature of and the date of all such information it reported.

8.     Identify all collection agencies or third parties, including attorneys at law, to whom PD Recovery sold, assigned, or placed any West Virginia Accounts for collection and provide all contracts or agreements between PD Recovery and each such outside debt collector pertaining to collection of the accounts.

9.     All documents pertaining to PD Recovery's policies and procedures pertaining to the making of payday loans, investigation of consumer complaints, and the collection of accounts, including, but not limited to, business operations manuals, written policies and procedures, and internal memoranda.

10.     All standard forms and notices used by PD Recovery for communication with West Virginia Consumers for debt collection along with an appropriate explanation of when, in what sequence, and under what circumstances each form or notice is used.

11.     Documents pertaining to the training of PD Recovery employees in applicable law, including the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq., the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act, 15 U.S.C § 1681 et seq., pertaining to debt collection activities, consumer reporting activities, and steps to be taken in the investigation and resolution of consumer complaints or disputes.

12.     Identify all present or former employees, including supervisory and managerial, who engaged in whole or in part in the making of payday loans or the collection of delinquent accounts during the period covered by the subpoena.

13.    All documents pertaining to PD Recovery's criteria for evaluating the creditworthiness of consumers or the determination to make a loan or to proceed in any capacity pertaining to a payday loan.

14.    Identify any outside persons or companies that assist PD Recovery in the evaluation of the creditworthiness of consumers or the determination to make the loan or to proceed in any capacity pertaining to a payday loan and provide all documents pertaining to the foregoing.

15.    All documents pertaining to any products or services other than payday loans, including other financial services products, sold by PD Recovery to West Virginia Consumers and, if there are any, (i) provide a list identifying all outside companies with whom PD Recovery has a relationship with for the sale of such products or services and (ii) provide a copy of the contract or agreement between PD Recovery and each such company.

16.    A list identifying all persons whose PD Recovery delinquent accounts were closed or written off by reason of default <u>and</u> have been sued in court by PD Recovery or its agents or assignees for collection of the alleged debt.

17.    For the consumers identified in item 16 above, describe all civil actions by providing the complete style of the case, including the civil action number, the name of the court where the case was filed, a copy of the complaint and/or answers and counterclaims, if any, and the final dispositional or latest substantive order or decree.

18.    A list identifying all West Virginia Consumers who were criminally prosecuted by PD Recovery, or whose accounts were referred to law enforcement agencies for criminal prosecution by PD Recovery, as a result of a check dishonored for insufficient funds or any other conduct arising from a payday loan transaction with PD Recovery.

8

19.     Provide a chart, diagram, or other documents identifying all parent companies, corporate affiliates, or subsidiaries of PD Recovery.

20.     All business licenses, certificates of authority, charters, and any other licenses or authorizations allowing PD Recovery, or any of its parent companies, corporate affiliates, or subsidiaries to engage in business or collect debts in West Virginia, and in any other state or jurisdiction, including applications and supporting documents filed to obtain the licenses and authorizations.

21.     All documents pertaining to or that identify the physical location of each office of PD Recovery during the period covered by the subpoena, and each address where PD Recovery receives mail, including (i) a copy of the lease for the physical location of each office; and (ii) a copy of the contract or agreement for each private mailbox or other locations where written or printed communications are received.

22.     The articles of incorporation, by-laws, charters, and any other documents pertaining to the creation, managment, operation, operating guidelines, objectives or mission of PD Recovery.

23.     All contracts or agreements of any type or nature by PD Recovery and any other party pertaining to:

i.      the operation or administration of its website;

ii.     leads generation;

iii.    processing or servicing of accounts;

iv.     transmission of funds to consumers' accounts;

v.      debiting of funds from consumers' accounts;

vi.     the marketing of its products or services to consumers; and

vii.     the application for, making of, or collection of payday loans that describe the parties' respective roles and obligations, methods of operation, and distribution of expenses incurred and proceeds generated.

24.     Produce copies of all advertisements that PD Recovery has published or that PD Recovery has caused to be published by others, pertaining to payday loans by PD Recovery, including advertisements published in print or electronic media (including the Internet), by newspapers, television or radio stations, or communicated in any manner or in any media.

25.     For each such "advertisement" that you produced in response to the preceding item herein above (i) identify the person or company that created or designed the advertisement; (ii) identify the person or company that published the advertisement; and (iii) produce a copy of the contract or agreement between PD Recovery and each person or company that created or designed the advertisement and each person or company that published the advertisement, including any other documents that identify the amount paid by PD Recovery to each such person or company for any service pertaining to its advertisements.

26.     All communications of any type or nature between PD Recovery and the Federal Deposit Insurance Corporation ("FDIC"), the Federal Trade Commission ("FTC"), the Internal Revenue Service ("IRS"), and any other state or federal regulators pertaining to the making, supervision or regulation of payday loans or other financial services products or the business practices of PD Recovery.

27.     Documents pertaining to all civil actions, including both private class action and individual suits, and any investigations or enforcement proceedings commenced by any state Attorney General's Office, the U.S. Department of Justice, the FDIC, the FTC, the IRS or any other state or federal law enforcement or regulatory agency, involving payday loans and/or the collection

of consumer accounts by PD Recovery, including (i) the complaint or initial pleading and all substantive pleadings or documents filed therein; and (ii) all dispositional orders, consent decrees, settlement agreements, assurances of discontinuance, or judgments of any type or nature from the matter.

Given under my hand this _27th_ day of August, 2009.

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL


By: _____
JILL L. MILES
DEPUTY ATTORNEY GENERAL
Consumer Protection/Antitrust Division

11

### HILARY B. MILLER
ATTORNEY AT LAW

MEMBER OF NEW YORK,
CONNECTICUT AND
DISTRICT OF COLUMBIA BARS

500 WEST PUTNAM AVENUE — SUITE 400
GREENWICH, CONNECTICUT 06830-6096
(203) 399-1320
FACSIMILE: (914) 206-3727

300 PARK AVENUE — SUITE 1700
NEW YORK, NEW YORK 10022-7402
(646) 350-0908

HILARY@MILLER.NET

PLEASE REPLY TO:
Connecticut Office

November 3, 2009

Norman A. Googel, Esq.
West Virginia Attorney General's Office
P.O. Box 1789
Charleston, West Virginia 25326-1789

Re: Dollar Financial Group, Inc.

Dear Mr. Googel:

We represent Dollar Financial Group, Inc. ("Dollar") in connection with the matters about which you have been communicating with Kim Love.

Dollar does not "do business as" PD Recovery, Inc., nor has it ever done so. Dollar is not in possession of the records sought pursuant to your subpoena.

Dollar does not conduct or transact business of any kind in the State of West Virginia, or with residents of West Virginia, and is not subject to the personal jurisdiction of the courts of that state.

We are advised that PD Recovery, Inc. is defunct. It ceased all operations and has not attempted to collect any debts anywhere in the United States at any time after January 2009.

It is respectfully requested that your file on this matter be closed.

Very truly yours,

HILARY B. MILLER

c.c.: Mark L. Prior, Esq.

C:\Documents and Settings\User\My Documents\Documents\Dollar Financial Group\Cash Til Payday\Letter to Norman A. Googel Esq. cr. 11-1-2009.doc (November 3, 2009 at 7:42 AM Rev. 6)



RECEIVED
NOV 0 5 2009
ATTORNEY GENERAL'S OFFICE



EXHIBIT
F

CASE  10-C-2129                KANAWHA                    PAGE  1

STATE OF WV EX REL DARRELL V.   vs.  GOVERNMENT EMPLOYEES CREDIT CE

LINE  DATE      ACTION

1  11/23/10   # ISSUED SUM & 10 CPYS; BILLED STATE; CASE INFO SHEET;
2             # COMPLAINT W/EXH'S
3  12/15/10   TK:O MLD TO N.GOGEL,H.MILLER; 12/08/10 TK
4  12/10/10   *O: AGREED CONSENT DISM DOLLAR FINANCIAL GROUP, PD RECOVERY &
5             JEFFREY WEISS/22K (S/12/8)
6  01/19/11   MC PMT ON FILING FEE; RCPT 468206; $145.00; ST OF WV
7  05/16/11   # MOT FOR DJ AGAINST GOVERNMENT EMPLOYEES CREDIT CENTER
8             # W/EXH'S & COS